[Civ. No. 13767. First Dist., Div. Two. Nov. 24, 1948.]

RALPH SHOOP et al., Appellants, v. THOMAS J. CALLAN et al., Respondents.

Di Maria & Di Maria for Appellants.

Cosgriff, Carr, McClellan & Ingersoll for Respondents.

GOODELL, J.—Appellants sued to quiet title to several lots in Redwood City and to annul a deed under which respondents Callan claim title to the same property. The decree was in favor of said respondents on their cross-complaint. A new trial was denied and this appeal was taken.

The deed under which respondents Callan claim the property was executed and recorded later than the appellants' deed to the same property. Both deeds arise out of tax proceedings, the property having been sold to both the state and the city for taxes which had been delinquent for upwards of six years prior to 1943.

Article 2, chapter 8, part 6, division 1 of the Revenue and Taxation Code establishes the method whereby property

subject to taxation by two or more taxing agencies is restored to the assessment rolls, by setting up the procedure for its sale to private purchasers and for the ratable distribution of the proceeds between the taxing agencies. Sections 3791, 3791.5, 3792 and 3793, Revenue and Taxation Code provide for an agreement between such agencies to effectuate such purposes.

Section 3793.5 provides: ". . . If provisions for the pro rata division of the proceeds of a sale of the property by the taxing agency are included in an agreement under this chapter, *the agreement shall require the taxing agency to sell the property to a private purchaser within two years after the execution of the deed to the taxing agency,* which period may be extended . . . for a reasonable . . . time by the board of supervisors . . ." (Emphasis added.)

Section 3807.5 provides that if a prorating agreement is made "and the property is not sold by the taxing agency within two years after the execution of the deed" or the extended time "*the taxing agency shall execute a deed to the State reconveying to the State all the right, title and interest of the State in the property* . . ." (Emphasis added.)

In an attempt to follow the provisions of article 2, an agreement was entered into on March 16, 1943, between the county of San Mateo and the city of Redwood City embracing the property here involved and other property. It recited that these properties had been deeded to both the state and the city, and it provided for cooperation in their sale by the state (acting through the county) to the city, so that they "may be restored to the tax and assessment rolls of both the County and the City." It fixed for each parcel a minimum price for resale by the city, such price for the property in question being $800. It provided that when sales were made by the city the proceeds, after certain deductions, would be prorated between the county and the city.

Pursuant to this agreement a deed was made by the county tax collector to the city of Redwood City of all this property, and 19 months later the property now in suit was sold by the city to appellants, after bids had been invited by published notice. A deed was then made by the city's tax collector to appellants, reciting a consideration of $1,000.

It was after this latter deed had been made to appellants that the county tax collector executed his deed of the same property to the respondents. Respondents concede that this was done "unwittingly."

■ The contention of respondents Callan (quoted from the agreed statement) is "that the deed from the City of Redwood City to the plaintiffs was ineffective because it was not executed within two years . . . *from the date of the agreement* between the County and the City, which instrument was dated March 16, 1943." (Emphasis added.)

The answer to this contention is that there is no provision in the law or in the contract so limiting the time for a deed from the city to private purchasers.

The provision of section 3793.5, *supra,* is that such agreements "shall require the taxing agency to sell the property to a private purchaser within two years *after the execution of the deed to the taxing agency.*" (Emphasis added.)

The deed from the county tax collector to the city of Redwood City (the "taxing agency") was made on March 24, 1944 (about a year after the date of the agreement) and the deed from the city to the appellants was made on October 27, 1945, which was well "within two years after the execution of the deed to the taxing agency" (although more than two years after the date of the agreement).

The requirement of section 3793.5 that the two-year limitation on resale be written into the prorate agreement was not complied with. Nor is there any language therein which attempts to paraphrase it or supplies any substitute for it. Had such requirement been followed—and assuming that such language should now be read into the agreement—the record shows clearly that the resale deed was made by the city to appellants well within the statutory limit.

■ Respondents claim that the agreement requires that the resale deed to the private purchaser be made within two years *from the date of the agreement,* but a careful examination shows that it does not do that. The words "resell" and "resale" are used throughout and although they are used in connection with deductions and minimum prices, they are nowhere used in connection with any time limit within which the resale must be made. Nor is there any other language therein which fixes any limitation of time on the execution of the resale deeds. Nowhere are the statutory words "private purchaser," or their equivalent, employed. However, the agreement does provide: "1. That the effective date of this agreement shall be the first date hereinabove mentioned. [March 16, 1943] ; 2. That the termination date of this agreement shall be two (2) years after its effective date, unless

otherwise extended by resolution of the Board of Supervisors . . .''

The agreement is one for the sale of real property. The normal meaning of the termination date of such an agreement must be that on or before that date the sale agreed to must be perfected. In this case that is the date within which the city could call for a deed and within which the county would be obligated to execute one. This construction of the agreement finds support in the fact that the only further reference to the termination date made in the agreement is found in section 3 which reads as follows: ''3. That the Board of Supervisors of the County of San Mateo agrees to sell to the City of Redwood City each of the parcels of real property hereinafter set out in Exhibit 'A', . . . which shall not have been redeemed as provided in the Revenue and Taxation Code . . . Said sale to be made pursuant to the terms and conditions herein set forth at any time the City of Redwood City may demand after the notice of this agreement has been given, and prior to the termination date of this agreement;''. This language obviously applies only to a sale from the state (acting through the county) to the city, *not from the city to private purchasers.* Such sale to the city was made on March 24, 1944 during the life of the agreement, and the agreement ·thereupon became fully executed so far as the county's obligation to convey to the city was concerned.

Intending private purchasers, such as appellants, reading this agreement of March 16, 1943 by its four corners, could not have found therein anything requiring the city to resell within two years from its effective date, or within any other period. Such agreement, then, could not have ''alerted'' such potential bidders or put them on notice or inquiry with respect to anything.

█ The deed of March 24, 1944 from the tax collector of San Mateo County to the city of Redwood City, recites that the property had been deeded to the state and to the city; it recites the agreement, approved by the state controller, for the purchase of the property by the city, and that legal notice thereof had been published; that no redemption had been made and that the county was required under the agreement and pursuant to section 3804, Revenue and Taxation Code to execute the deed to the city. It ''grants'' the property in question (and other parcels) without any words of condition or restriction whatever, and according to the express

provision of section 3807 it conveyed "all the State's interest in the property."

Moreover, section 3806 then provided that "Except as against actual fraud, the deed is conclusive evidence of compliance with this article and otherwise has the same effect as evidence and as a conveyance as a deed to a private purchaser after sale of tax-deeded property." (The section has been since amended.)

With title thus vested in itself, the city on October 27, 1945 made a grant deed to the appellants of the property in suit. This deed recites that the property had been sold to appellants at private sale for $1,000. It contains no recital of any other agreement and no conditional language whatever. It does contain certain racial restrictions but they of course have no bearing on the present controversy. The deed unquestionably conveyed every vestige of the state's title which had passed to the city by the county tax collector's deed. Moreover, in 1942 a deed had been made directly to the city by the former owners and the city's deed to appellants of course conveyed the residual interest, if any, of such former owners.

The deed from the county tax collector to the Callans was made on December 20, 1945, 21 months after he had conveyed all the state's interest in the same property to the city, and almost 2 months after the city had conveyed to appellants. Appellants' deed was recorded more than a month before that of respondents was recorded, hence there is no doubt or question as to priority of recordation.

There is no evidence in the record to support the findings or conclusions that title became vested in the Callans.

In the absence of a provision in the agreement limiting the time for the execution of a deed to a private purchaser on resale there is no basis whatever for respondents' arguments (a) that a shorter period might legally have been prescribed in the agreement than two years *after the deed*, required by section 3793.5, or (b) that appellants took with notice of such shorter limitation, or were put on inquiry with respect thereto, or (c) that a condition precedent, or any other condition, was annexed either by the agreement or by either deed, which would defeat or impair appellants' title.

The judgment is reversed with directions to the trial court to enter a judgment and decree annulling the deed from the county tax collector to the respondents Callan, and quieting the appellants' title to the property.

Nourse, P. J., and Dooling, J., concurred.